# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Bismarck Park Avenue Properties, LLP, | ) | |
| | ) | **ORDER GRANTING** |
| Plaintiff, | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | Case No. 1:21-cv-165 |
| Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| Park Avenue Business Condo Association, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-175 |
| vs. | ) | |
| | ) | |
| Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| B & C Properties, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:21-cv-187 |
| vs. | ) | |
| | ) | |
| Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's motion for summary judgment filed on December 15, 2022.[1] See Doc. No. 37. Plaintiff B & C Properties, LLP ("B &C") filed a response in opposition

---

[1] The Defendant also moved for summary judgment against Bismarck Park Avenue Properties, LLP and Park Avenue Business Condo Association, LLP. See Doc. Nos. 21 and 42. The Court will address those motions in separate orders.

1

to the motion on January 26, 2023. See Doc. No. 38. The Defendant filed a reply on February 10, 2023. See Doc. No. 46. For the reasons set forth below, the motion is granted.

I. **BACKGROUND**

B & C is a limited liability partnership formed for the purpose of owning and maintaining a property located at 301 South 3rd Street in Bismarck, ND ("the building"). The building is a strip mall that houses five businesses, including Steep Me a Cup of Tea, Cost Cutters, Big Dog Distillery, Jimmy John's, and Noodles World Kitchen. Stanley Beierle, Bernadine Beierle, Elizabeth Chen, and Mike Chen are the partners of B & C. Stanley Beierle and Bernadine Beierle are residents of North Dakota and Elizabeth Chen and Mike Chen are residents of Alabama. Owners Insurance Company ("Owners") is a Michigan insurance company with its principal place of business in Lansing, Michigan. B & C is the named insured under Policy No. 50-924-831-00 ("the policy") which is issued by Owners and covers the building.

On August 25, 2019, a hailstorm damaged the building. The roof, awning, roof vent, gutter, and downspout sustained damage. B & C filed a claim with Owners under the policy. Owners estimated the replacement cost value to be $122,282.67. On November 4, 2021, Owners issued a payment of $86,985.53 for the actual cash value of the damage. Owners determined the cash value owed to B & C by deducting depreciation ($32,797.14) and B & C's ($2,500) deductible from the replacement cost value. See Doc. No. 39-4. B & C put the actual cash value payment in escrow and to date the funds have not been used for any repairs.

On May 26, 2020, B & C obtained an estimate of $6,979 from Twin City Roofing, LLC for flashing repairs. On April 31, 2021, B & C obtained an estimate of $126,575 from Industrial Enterprises Inc. for the remainder of the repairs, which exceeded Owner's estimated replacement

cost value of $122,282.67. On May 4, 2021, counsel for B & C emailed the estimates to Owners. See Doc. No. 41-2. On July 2, 2021, Owners responded by stating, "As stated in my voicemail, I've reviewed the estimates and it looks like to me there is some overlap in the work being performed. Just need some clarification, thanks. Call me when you have a few minutes to discuss." See Doc. No. 41-3.

On September 22, 2021, B & C brought claims against Owners in state court for breach of contract and bad faith and unfair claims practices. On October 1, 2021, Owners removed the action to federal court on the basis of diversity jurisdiction. B & C alleges Owners breached its contract with B & C by paying the actual cash value rather than replacement cost for the damages the hailstorm caused to the building. B & C further alleges Owners breached an implied covenant of good faith and fair dealing by acting unreasonably in handling B & C's claim. B & C also seeks a declaratory judgment that Owners is obligated under the policy to pay replacement cost for the damaged components of the building. On January 18, 2023, pursuant to the parties' stipulation (Doc. No. 27) the Court issued an Order (Doc. No. 32) consolidating B & C's action against Owners with two other actions involving similar claims other parties brought against Owners. Owners filed the instant motion for summary judgment on December 15, 2022. The motion has been fully briefed and is ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are

factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.     LEGAL DISCUSSION

In its motion for summary judgment Owners contends B & C cannot prove Owners breached its obligations under the policy or that it acted in bad faith by withholding replacements cost because B & C failed to comply with the policy's repair or replace prerequisite. B & C argues

Owners prevented it from completing the condition precedent by directing B & C to have the price approved before completing the repairs.

### A.     BREACH OF CONTRACT

#### 1.     Repair or Replace Prerequisite

Because the jurisdictional basis for this action is based on diversity of citizenship, the Court must apply the substantive law of North Dakota. See Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006). Under North Dakota law, "[t]erms of an insurance policy are given their ordinary, usual and commonly accepted meaning. An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document." Ctr. Mut. Ins. Co. v. Thompson, 2000 ND 192, ¶ 14, 618 N.W.2d 505 (citations omitted).

The relevant provision of B & C's policy with Owners provides:

> d.     We will determine the value of Covered Property as follows:
>
>     (1)     At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.
>
>         (a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.
>
>         (b) We will not pay on a replacement cost basis for any loss or damage:
>
>             (i) Until the lost or damaged property is actually repaired or replaced; and
>
>             (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

>    (c) We will not pay more for loss or damage on a replacement cost basis than the least of:
>
>    (i) The cost to replace, on the same premises, the lost or damage property with other property:
>
>    i. Of comparable material and quality; and
>
>    ii. Used for the same purpose; or
>
>    (ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

See Doc. No. 39-5, pp. 107-108.

The repair or replace provision of the policy is unambiguous. The clear language of the policy requires B & C to repair or replace damaged property <u>before</u> Owners will pay replacement cost. If B & C does not repair or replace the damaged property it is only entitled to actual cash value under the policy. Almost identical language has been interpreted to condition replacement cost recovery on the insured actually repairing or replacing the property. <u>See</u> <u>Vakas v. Hartford Cas. Ins. Co.</u>, 361 F. App'x 1 (10th Cir. 2010) (holding the insured was only entitled to actual cash value because the insured failed to comply with the unambiguous repair or replace prerequisite in the policy and implicitly elected the actual cash value payment option by not repairing or replacing the damaged property).

Here, the parties do not dispute the meaning of the repair and replace prerequisite. Scott Beierle, who testified on behalf of B & C, testified that he was aware the policy requires B & C to repair or replace any damaged parts of the building <u>before</u> Owners will pay replacement cost. <u>See</u> Doc. No. 39-1, pp. 5-6. B & C does not cite any legal authority holding that an insurance company's liability for replacement cost arises before the repair or replacement has been completed when the policy contains a repair or replace prerequisite.

The only repair B & C allegedly made was to some flashing on the north side of the building near Jimmy John's. The record reveals B & C failed to provide sufficient evidence that the repair was completed. The only evidence B & C provided is a letter from Scott Harr with Twin City Roofing, indicating the repair price is $6,979. See Doc. No. 39-6. The letter states, "Payment: 100% upon completion." This is not evidence the repair was completed. Rather, it shows an estimated price to be paid upon completion. Further, the complaint states, "Part of the estimate obtained by B & C includes replacement of the metal wall cap flashing system, which was estimated at $6,979." See Doc. 1-3, p. 3 in Case No. 1:21-cv-187. The complaint does not reveal whether the repair was completed. B & C failed to present evidence of who completed the repair, the cost of the repair, when it was completed, or if the repair was in fact completed. Therefore, B & C is not entitled to replacement cost from the alleged flashing repair. It is undisputed that B & C did not complete any other repairs.

The policy is not ambiguous. The unambiguous terms of the contract require the insured to actually repair or replace the damaged property before collecting the full replacement cost. And if the insured does not repair or replace the damaged property, he or she is only entitled to actual cash value. In other words, the requirement that the damaged property be repaired or replaced is a condition precedent to the insured (B & C) being entitled to replacement cost. B & C received a $86,985.53 payment from the insurer; put that money in escrow; and the funds have not been spent or used for any repairs. As such, there is no showing as a matter of law, that B & C is entitled to replacement cost coverage.

## 2. Prevention of Condition Precedent

Under North Dakota law, "[E]ach party to a contract impliedly agrees not to prevent the other party from performing and not to render performance impossible. When one party prevents the other party's performance of a term of a contract, it excuses the nonperformance and provides a defense in a suit for breach by the nonperformance." Barrett v. Gilbertson, 2013 ND 35, ¶ 21, 827 N.W.2d 831 (internal citations omitted). B & C maintains Owners prevented it from fulfilling the condition precedent of repairing or replacing the property by not accepting B & C's estimate and not sending a contractor from Minneapolis to complete the repairs. B & C argues this prevention excuses its failure to meet the repair or replace policy requirement.

On May 4, 2021, counsel for B & C emailed an estimate to Owners that exceeded Owners' replacement cost estimate. See Doc. No. 41-2. On July 2, 2021, Owners responded by stating, "As stated in my voicemail, I've reviewed the estimates and it looks like to me there is some overlap in the work being performed. Just need some clarification, thanks. Call me when you have a few minutes to discuss." See Doc. No. 41-3. B & C alleges Owners prevented it from completing the work by discontinuing communication and not accepting B & C's estimate. The record does not support this contention. The email from Owners on July 2, 2021, informed B & C that clarification was needed and encouraged B & C to call. B & C does not allege it emailed, called, or otherwise communicated with Owners to provide the requested clarification of the estimate. It appears from the record that B & C, rather than Owners, ceased communication. Further, the policy does not require Owners to accept B & C's estimates that exceed its own. The Court finds Owners did not prevent B & C from effectuating repairs.

The undisputed evidence shows B & C understood the policy requires it to repair or replace the damaged property before Owners will pay replacement cost. Nevertheless, nearly 4 years have

8

passed since the hailstorm and B & C still has not completed any of the work, other than allegedly repairing the flashing. Therefore, B & C is not entitled to replacement costs at this stage.

### 3.    **Breach of Contract Claim**

"The elements for a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. A breach of contract is the nonperformance of a contractual duty when it is due. The party asserting a breach of contract must prove all elements." Swenson v. Mahlum, 2019 ND 144, ¶ 19, 927 N.W.2d 850 (internal citations omitted).

B & C argues Owners breached their contract with B & C by failing to pay replacement cost for damages to the building, as required by the policy. As noted above, it is undisputed that the policy requires B & C to first repair or replace the damaged property before Owners will pay replacement cost, and it is undisputed that B & C has not completed the repairs. B & C is not entitled to replacement cost of the damaged property.

B & C also argues summary judgment is improper because the parties dispute the amount of loss. However, any dispute as to amount of loss regarding replacement cost is irrelevant because B & C is not entitled to replacement cost at this stage. The property must be repaired or replaced as a *condition precedent* to recovering replacement costs. Additionally, a review of the complaint reveals the actual cost value paid by Owners is not disputed in this case. B & C's breach of contract, declaratory judgment, and bad faith claims are all based on Owner's failure to pay replacement cost value. B & C does not bring claims or seek damages for any alleged failure of Owners to pay the appropriate actual cost value. Therefore, even if disputed, the actual cash value is not an issue of material fact in dispute in this case. Accordingly, Owners did not breach its obligations under

its policy with B & C. Summary judgment in favor of Owners as to B & C's breach of contract claim is granted.

### B. BAD FAITH CLAIM

An insurer has a duty to act fairly and in good faith in its contractual relationship with its policy holders. Hanson v. Cincinnati Life Ins. Co., 1997 ND 230, ¶ 29, 571 N.W.2d 363. "The test for bad faith is whether the insurer acts unreasonably in handling an insured's claim by failing to compensate the insured, without proper causes, for a loss covered by the policy." Id. B & C argues Owners breached its obligations of good faith and fair dealing by acting unreasonably in handling B & C's claim. The unambiguous terms of the policy require B & C to repair or replace damaged property as a *condition precedent* before Owners must pay replacement cost. B & C is not entitled to replacement cost because it did not complete the required repairs. Under the policy B & C is only entitled to the actual cash value that Owners paid. Therefore, Owners did not act in bad faith by failing to pay replacement costs under the circumstances. In this case, B & C had contracted for replacement cost coverage. The insured is generally entitled under the policy to an immediate payment representing the actual cash value of the loss, which was done in this case. The actual cash value payments ($86,985.53) can then be used as seed money to start the necessary repairs. Here, B & C put that cash value payment in escrow back in 2019; the monies remain there today; and no further funds have been spent or used for repairs. Summary judgment in favor of Owners as to B & C's bad faith claim is granted.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 37) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2023.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court