IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Bismarck Park Avenue Properties, LLP,<br><br>Plaintiff,<br><br>vs.<br><br>Owners Insurance Company,<br><br>Defendant. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:21-cv-165 |
| Park Avenue Business Condo Association, LLP,<br><br>Plaintiff,<br><br>vs.<br><br>Owners Insurance Company,<br><br>Defendant. | Case No. 1:21-cv-175 |
| B & C Properties, LLP,<br><br>Plaintiff,<br><br>vs.<br><br>Owners Insurance Company,<br><br>Defendant. | Case No. 1:21-cv-187 |

Before the Court is the Defendant's motion for summary judgment filed on February 3, 2023.[1] See Doc. No. 42. Plaintiff Park Avenue Business Condo Association, LLP ("the Association") filed a response in opposition to the motion on February 24, 2023. See Doc. No. 47.

---

[1] The Defendant also moved for summary judgment against Bismarck Park Avenue Properties, LLP and B & C Properties, LLP. See Doc. Nos. 21 and 37. The Court will address those motions in separate orders.

1

The Defendant filed a reply on March 10, 2023. See Doc. No. 50. For the reasons set forth below, the motion is granted.

I.      **BACKGROUND**

Park Avenue Business Condo Association, LLP is a commercial condominium association that manages and operates six commercial units located at 1313 Republic Street and 1323 Republic Street in Bismarck, ND ("the buildings"). Owners Insurance Company ("Owners") is a Michigan insurance company with its principal place of business in Lansing, Michigan. The Association is the named insured under Policy No. 164608-77061763-18 ("the policy") which is issued by Owners and covers the buildings.

On August 25, 2019, a hailstorm damaged the buildings. The roofs, overhead doors, gutters, ridge caps, ice shields, and vent shields of the buildings sustained damage. The Association filed a claim with Owners under the policy. Owners estimated the replacement cost value of the damaged components of the buildings to be $83,482.66. On September 13, 2019, Owners issued a payment of $60,431.66 for the actual cash value of the damage. Owners determined the cash value owed to the Association by deducting deprecation and the Association's deductible from the replacement cost value. See Doc. No. 44-4. $30,715.83 was attributed to the 1323 Republic Street building, and $29,715.83 was attributed to the 1313 Republic Street building. Id. The Association put the actual cash value payment in escrow and to date the funds have not been used for any repairs.

On July 23, 2021, the Association brought claims against Owners in state court for breach of contract and bad faith and unfair claims practices. On September 9, 2021, Owners removed the

action to federal court on the basis of diversity jurisdiction.[2] The Association alleges Owners breached its contract with the Association by paying actual cash value rather than replacement cost for the damages the hailstorm caused to the buildings. The Association further alleges Owners breached an implied covenant of good faith and fair dealing by acting unreasonably in handling the Association's claim. The Association also seeks a declaratory judgment that Owners is obligated under the policy to pay replacement cost for the damaged components of the buildings. On January 18, 2023, pursuant to the parties' stipulation (Doc. No. 27) the Court issued an Order (Doc. No. 32) consolidating the Association's action against Owners with two other actions involving similar claims other parties brought against Owners. Owners filed the instant motion for summary judgment on February 3, 2023. The motion has been fully briefed and is ripe for disposition.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[2] Upon review of the Plaintiff's Rule 7.1 Corporate Disclosure Statement the Court is satisfied that the parties are diverse. See Doc. No. 57.

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.    LEGAL DISCUSSION

In its motion for summary judgment Owners contends the Association cannot prove Owners breached its obligations under the policy or that it acted in bad faith by withholding replacements cost because the Association failed to comply with the policy's repair or replace prerequisite. The Association argues Owners prevented it from completing the condition precedent by directing the Association to have the price approved before completing the repairs.

A.  **BREACH OF CONTRACT**

   1.  **Repair or Replace Prerequisite**

Because the jurisdictional basis for this action is based on diversity of citizenship, the Court must apply the substantive law of North Dakota. See Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006). Under North Dakota law, "[t]erms of an insurance policy are given their ordinary, usual and commonly accepted meaning. An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document." Ctr. Mut. Ins. Co. v. Thompson, 2000 ND 192, ¶ 14, 618 N.W.2d 505 (citations omitted).

The relevant provision of the Association's policy with Owners provides:

3.  Replacement Cost

   a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
      …
   c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

   d. We will not pay on a replacement cost basis for any loss or damage:

      (1) Until the lost or damaged property is actually repaired or replaced; and

      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
      …
   e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

      (1) The Limit of Insurance applicable to the lost or damaged property;

     (2) The cost to replace the lost or damaged property with other property:
       a. Of comparable material and quality; and

       b. Used for the same purpose; or

     (3) The amount actually spent that is necessary to repair or replace the damaged property.

See Doc. No. 44-3, pp. 67-68.

  The repair or replace provision of the policy is unambiguous. The clear language of the policy requires the Association to repair or replace damaged property <u>before</u> Owners will pay replacement cost. If the Association does not repair or replace the damaged property it is only entitled to actual cash value under the policy. Almost identical language has been interpreted to condition replacement cost recovery on the insured actually repairing or replacing the property. See <u>Vakas v. Hartford Cas. Ins. Co.</u>, 361 F. App'x 1 (10th Cir. 2010) (holding the insured was only entitled to actual cash value because the insured failed to comply with the unambiguous repair or replace prerequisite in the policy and implicitly elected actual cash value payment option by not repairing or replacing the damaged property).

  Here, the parties do not dispute the meaning of the repair and replace prerequisite. Scott Beierle, who testified on behalf of the Association, testified that he was aware the policy requires the Association to repair or replace any damaged parts of the buildings <u>before</u> Owners will pay replacement cost. See Doc. No. 44-2, pp. 8. It is undisputed that the Association has not made any repairs to the buildings. The Association does not cite any legal authority holding that an insurance company's liability for replacement cost arises before the repair or replacement has been completed when the policy contains a repair or replace prerequisite.

  The policy is not ambiguous. The unambiguous terms of the contract require the insured to actually repair or replace the damaged property <u>before</u> collecting the full replacement cost. And if

the insured does not repair or replace the damaged property, he or she is only entitled to actual cash value. In other words, the requirement that the damaged property be repaired or replaced is a condition precedent to the insured (the Association) being entitled to replacement cost. The Association received a $60,431.66 payment from the insurer; put that money in escrow; and the funds have not been spent or used for any repairs. As such, there is no showing, as a matter of law, that the Association is entitled to replacement cost coverage.

### 2. **Prevention of Condition Precedent**

Under North Dakota law, "[E]ach party to a contract impliedly agrees not to prevent the other party from performing and not to render performance impossible. When one party prevents the other party's performance of a term of a contract, it excuses the nonperformance and provides a defense in a suit for breach by the nonperformance." Barrett v. Gilbertson, 2013 ND 35, ¶ 21, 827 N.W.2d 831 (internal citations omitted). The Association maintains Owners prevented it from fulfilling the condition precedent of repairing or replacing the property by not accepting the Association's estimates and not sending a contractor from Minneapolis to complete the repairs of the damaged property. The Association argues this prevention excuses its failure to meet the repair or replace policy requirement.

The record does not support the Association's contention that Owners prevented it from completing repairs on the damaged property. Despite the Association's awareness and understanding of the repair or replace policy provision, according to the testimony of Beierle the Association is waiting to repair or replace the damaged property until Owners approves the Association's estimates or sends a contractor from Minneapolis. See Doc. No. 44-2, pp. 8-9. Although the Association argues Owners prevented it from complying with the repair or replace

requirement by not accepting their estimates and failing to send a contractor, the record indicates Owners asked the Association to complete the repairs, rather than preventing it from doing so. Beierle testified, "[T]hey asked us to repair the buildings with, knowing that those claims and admitting that those are, the estimates are below what they're willing to pay." Id. at p. 9. Owners did not prevent the Association from repairing or replacing the damaged property. Rather, the Association chose not to do so due to a dispute regarding estimates. Beierle testified to the following:

> Q. Okay. But had, had Park Avenue chosen to, Park Avenue could have gone ahead and repaired or replaced those damaged buildings itself and the submitted that claim to Owners had you wanted to, correct?
>
> A. No.
>
> Q. Why?
>
> A. Because we were told if we submit, whatever we submit on those claims, they're not going to pay it.
>
> Q. Okay. They're only going to pay the estimates that they provided to you.
>
> A. Yes.
>
> Q. Okay. So this case, really, I guess, comes down to there's a, there's a dispute between Park Avenue and Owners as to how much Park Avenue believes they have coming in insurance benefits for these damages buildings, correct?
>
> A. Yes.

Id. at pp. 9-10. Beierle's testimony reveals the Association's understanding that Owners would have paid replacement cost if it had completed repairs or replacements. Further, in the complaint the Association stated, "Auto-Owners has taken the position that when the Association makes the

necessary repairs it will release the depreciation amount of $22,051 to the Association." See Doc. No. 44-1, p. 4. The Association's decision not to complete repairs due to its dissatisfaction with the amount Owners would have paid in replacement cost does not amount to Owners preventing the Association from completing repairs.

The Court finds Owners did not prevent the Association from effectuating repairs. The undisputed evidence shows the Association understood the policy requires it to repair or replace the damaged property before Owners will pay replacement cost. Nevertheless, nearly 4 years have passed since the hailstorm and the Association still has not completed any of the work on the buildings. Therefore, the Association is not entitled to replacement costs at this stage.

### 3. **Breach of Contract Claim**

"The elements for a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. A breach of contract is the nonperformance of a contractual duty when it is due. The party asserting a breach of contract must prove all elements." Swenson v. Mahlum, 2019 ND 144, ¶ 19, 927 N.W.2d 850 (internal citations omitted).

The Association argues Owners breached its contract with the Association by failing to pay replacement cost for damages to the buildings, as required by the policy. As noted above, it is undisputed that the policy requires the Association to repair or replace the damaged property before Owners will pay replacement cost, and it is undisputed that the Association has not completed any repairs to the buildings. The Association is not entitled to replacement cost of the damaged property at this stage. Under the policy the Association is only entitled to actual cost value, which Owners paid on September 13, 2019.

The Association also argues summary judgment is improper because the parties dispute the amount of loss. However, any dispute as to amount of loss regarding replacement cost is irrelevant because the Association is not entitled to replacement cost at this stage. The property must be repaired or replaced as a *condition precedent* to recovering replacement costs. Additionally, a review of the complaint reveals the actual cash value paid by Owners is not disputed in this case. The Association's breach of contract, declaratory judgment, and bad faith claims are all based on Owner's failure to pay replacement cost value. The Association has not brought claims or sought damages for any alleged failure of Owners to pay the appropriate actual cash value. Therefore, even if disputed, the actual cash value is not an issue of material fact in dispute in this case. Accordingly, Owners did not breach its obligations under its policy with the Association. Summary judgment in favor of Owners as to the Association's breach of contract claim is granted.

### B.     **BAD FAITH CLAIM**

An insurer has a duty to act fairly and in good faith in its contractual relationship with its policy holders. Hanson v. Cincinnati Life Ins. Co., 1997 ND 230, ¶ 29, 571 N.W.2d 363. "The test for bad faith is whether the insurer acts unreasonably in handling an insured's claim by failing to compensate the insured, without proper causes, for a loss covered by the policy." Id. The Association argues Owners breached its obligations of good faith and fair dealing by acting unreasonably in handling the Association's claim. The unambiguous terms of the policy require the Association to repair or replace damaged property as a *condition precedent* before Owners must pay replacement cost. The Association is not entitled to replacement cost at this stage because it did not complete any required repairs to the buildings. Under the policy the Association is only entitled to actual cash value that Owners paid. Therefore, Owners did not act in bad faith by failing

to pay replacement cost under the circumstances. In this case, the Association had contracted for replacement cost coverage. The insured is generally entitled under the policy to an immediate payment representing the actual cash value of the loss, which was done in this case. The actual cash value payment ($60,431.66) can then be used as seed money to start the necessary repairs. Here, the Association put that cash value payment in escrow back in 2019; the monies remain there today; and no further funds have been spent or used for repairs. Summary judgment in favor of Owners as to the Association's bad faith claim is granted.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 42) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2023.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court