## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Bismarck Park Avenue Properties, LLP, <br><br> Plaintiff, <br><br> vs. <br><br> Owners Insurance Company, <br><br> Defendant. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:21-cv-165 |
| Park Avenue Business Condo Association, LLP, <br><br> Plaintiff, <br><br> vs. <br><br> Owners Insurance Company, <br><br> Defendant. | Case No. 1:21-cv-175 |
| B & C Properties, LLP, <br><br> Plaintiff, <br><br> vs. <br><br> Owners Insurance Company, <br><br> Defendant. | Case No. 1:21-cv-187 |

Before the Court is the Defendant's motion for summary judgment filed on December 1, 2022.[1] See Doc. No. 21. Plaintiff Bismarck Park Avenue Properties, LLP ("BPAP") filed a response in opposition to the motion on January 26, 2023. See Doc. No. 34. The Defendant filed

---

[1] The Defendant also moved for summary judgment against B & C Properties, LLP and Park Avenue Business Condo Association, LLP. See Doc. Nos. 37 and 42. The Court will address those motions in separate orders.

1

a reply on February 10, 2023. See Doc. No. 45. For the reasons set forth below, the motion is granted.

I.   **BACKGROUND**

Bismarck Park Avenue Properties, LLP owns commercial buildings ("the buildings") with the following addresses in Bismarck, North Dakota: 1236 Park Avenue; 1309 Park Avenue; 1351 Park Avenue; 1421 East Main; 1323 Republic Street unit L; and 1323 Republic Street unit M. Owners Insurance Company ("Owners") is a Michigan insurance company with its principal place of business in Lansing, Michigan. BPAP is the named insured under Policy No. 064608-77047088-18 ("the policy") which is issued by Owners and covers the buildings.

BPAP alleges the buildings sustained damaged from a hailstorm on August 25, 2019. BPAP filed a claim with Owners under the policy. Owners issued payments to BPAP for actual cash value in the amounts of $53,553.44 issued on September 27, 2019, $88,828.62 issued on March 31, 2020, and $54,779.35 issued on July 9, 2020. See Doc. 24-4. On August 13, 2020, Owners issued a supplemental payment of $7,287.91 pursuant to a revised estimate. Id. The total amount of payments issued to BPAP for the actual cash value was $204,449.32. Owners determined the cash value owed to the Association by deducting deprecation and the Association's deductible from the replacement cost value. BPAP put the payments in escrow and to date the funds have not been used for any repairs.

On July 23, 2021, BPAP brought claims against Owners in state court for breach of contract and bad faith and unfair claims practices. On August 11, 2021, Owners removed the action to federal court on the basis of diversity jurisdiction.[2] BPAP alleges Owners breached its contract

---

[2] Upon review of the Plaintiff's Rule 7.1 Corporate Disclosure Statement the Court is satisfied that the parties are diverse. See Doc. No. 53.

with BPAP by paying actual cash value rather than replacement cost for the damages the hailstorm caused to the buildings. BPAP further alleges Owners breached an implied covenant of good faith and fair dealing by acting unreasonably in handling BPAP's claim. BPAP also seeks a declaratory judgment that Owners is obligated under the policy to pay replacement cost for the damaged components of the buildings. On January 18, 2023, pursuant to the parties' stipulation (Doc. No. 27) the Court issued an Order (Doc. No. 32) consolidating BPAP's action against Owners with two other actions involving similar claims other parties brought against Owners. Owners filed the instant motion for summary judgment on December 1, 2022. The motion has been fully briefed and is ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir.

2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.   LEGAL DISCUSSION

In its motion for summary judgment Owners contends BPAP cannot prove Owners breached its obligations under the policy or that it acted in bad faith by withholding replacement cost because BPAP failed to comply with the policy's repair or replace prerequisite. BPAP argues Owners prevented it from completing the condition precedent by directing BPAP to have the price approved before completing the repairs.

#### A.   BREACH OF CONTRACT

##### 1.   Repair or Replace Prerequisite

Because the jurisdictional basis for this action is based on diversity of citizenship, the Court must apply the substantive law of North Dakota. See Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006). Under North Dakota law, "[t]erms of an insurance policy are given their ordinary, usual and commonly accepted meaning. An ambiguity exists when good arguments

can be made for two contrary positions about the meaning of a term in a document." Ctr. Mut. Ins. Co. v. Thompson, 2000 ND 192, ¶ 14, 618 N.W.2d 505 (citations omitted).

The relevant provision of BPAP's policy with Owners provides:

3. Replacement Cost

   a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
   …
   c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

   d. We will not pay on a replacement cost basis for any loss or damage:

      (1) Until the lost or damaged property is actually repaired or replaced; and

      (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
   …
   e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

      (1) The Limit of Insurance applicable to the lost or damaged property;

      (2) The cost to replace the lost or damaged property with other property:
         a. Of comparable material and quality; and

         b. Used for the same purpose; or

      (3) The amount actually spent that is necessary to repair or replace the damaged property.

See Doc. No. 24-3, pp. 83-84.

5

The repair or replace provision of the policy is unambiguous. The clear language of the policy requires BPAP to repair or replace damaged property <u>before</u> Owners will pay replacement cost. If BPAP does not repair or replace the damaged property it is only entitled to actual cash value under the policy. Almost identical language has been interpreted to condition replacement cost recovery on the insured actually repairing or replacing the property. See <u>Vakas v. Hartford Cas. Ins. Co.</u>, 361 F. App'x 1 (10th Cir. 2010) (holding the insured was only entitled to actual cash value because the insured failed to comply with the unambiguous repair or replace prerequisite in the policy and implicitly elected the actual cash value payment option by not repairing or replacing the damaged property).

Here, the parties do not dispute the meaning of the repair and replace prerequisite. Scott Beierle, who testified on behalf of BPAP, testified that he was aware the policy requires BPAP to repair or replace any damaged parts of the buildings <u>before</u> Owners will pay replacement cost. See Doc. No. 24-2, p. 16. Additionally, Beierle testified that he is not aware of any other terms or provisions in the policy that would create any different obligation on Owners to pay replacement cost coverage benefits other than the repair and replace prerequisite. <u>Id</u>. at p. 17. BPAP does not cite any legal authority holding that an insurance company's liability for replacement cost arises before the repair or replacement has been completed when the policy contains a repair or replace prerequisite.

The only damaged property BPAP allegedly repaired was the roof of 1323 Republic Street until L. Owners argues summary judgment is appropriate with respect to the 1323 Republic Street until L roof repair because BPAP did not comply with its obligations outlined in the policy. The relevant provision of BPAP's policy with Owners provides:

> 3. Duties in the Event of Loss or Damage
> a. You must see that the following are done in the event of loss or damage

6

> to Covered Property:
> …
> (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine our books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> (8) Cooperate with us in the investigation or settlement of the claim.

See Doc. No. 24-3, p. 79.

Owners requested BPAP provide documentation several times. First, Owners sent BPAP a letter on February 6, 2020, stating "The replacement cost provision in your policy requires you to notify us within 180 days after the loss of your decision to make a further claim for the replacement cost. To receive the payment, please submit an itemized invoice, photos of repaired property and other documentation we may further request." See Doc. No. 24-6. Similarly, Owners sent a letter on March 12, 2021, notifying BPAP it must submit an itemized invoice, photos of repaired property, and other documentation Owners may request by April 12, 2021, to make a claim for replacement cost. See Doc. No. 24-7. On April 15, 2021, Owners sent a letter to BPAP stating "The deadline of April 12, 2021 has passed, and we have not received the requested information from our March 12, 2021 letter. Therefore, the replacement cost portion of your claim has been closed, and we will be closing our file." See Doc. No. 24-9. Despite the deadline for claims passing, Owners gave BPAP another opportunity to provide the requested information when it sent another letter on April 27, 2021, asking BPAP to "provide itemized, detailed breakdown of all material cost, measurements and labor related to repair." See Doc. No. 24-10.

Beierle testified that BPAP did not send Owners itemized invoices, photos of the repaired property, and other documentation showing that the roof of 1323 Republic Street until L or any other damaged property had been repaired. See Doc. No. 24-2, p.18. Beierle acknowledged his awareness of the letters sent from Owners requesting the information. Id. at p. 18. Despite repeated requests BPAP did not provide Owners any proof that it repaired or replaced the roof of 1323 Republic Street unit L. Additionally, in its "Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment" (Doc. No. 34) BPAP did not cite to any documents evidencing that it completed the alleged repair. Accordingly, BPAP is not entitled to replacement cost for the roof of 1323 Republic, unit L at this stage. Further, BPAP undisputedly did not provide any evidence that it completed any other repairs to damaged property.

The policy is not ambiguous. The unambiguous terms of the contract require the insured to actually repair or replace the damaged property before collecting the full replacement cost. And if the insured does not repair or replace the damaged property, he or she is only entitled to actual cash value. In other words, the requirement that the damaged property be repaired or replaced is a condition precedent to the insured (BPAP) being entitled to replacement cost. BPAP received payments totaling $204,449.32 from the insurer; put that money in escrow; and the funds have not been spent or used for any repairs. As such, there is no showing, as a matter of law, that BPAP is entitled to replacement cost coverage.

### 2. **Prevention of Condition Precedent**

Under North Dakota law, "[E]ach party to a contract impliedly agrees not to prevent the other party from performing and not to render performance impossible. When one party prevents the other party's performance of a term of a contract, it excuses the nonperformance and provides

a defense in a suit for breach by the nonperformance." Barrett v. Gilbertson, 2013 ND 35, ¶ 21, 827 N.W.2d 831 (internal citations omitted). When applying the doctrine of prevention in *Int'l Travel Arrangers v. NWA, Inc.*, the Eighth Circuit Court of Appeals held that a party may breach a contract only by preventing or making impossible the other party's performance—not merely by making performance more difficult. 991 F.2d 1389, 1405-06 (8th Cir. 1993). BPAP maintains Owners prevented it from fulfilling the condition precedent of repairing or replacing the property by not accepting BPAP's estimates. BPAP argues this prevention excuses its failure to meet the repair or replace policy requirement.

Marshal Matlock, an Owners claim representative, testified that he advised BPAP to get a contractor, have the contractor put together an estimate, and send the estimate to him. See Doc. No. 24-8, p. 7. Although BPAP provided an estimate from a contractor, Owners determined the estimate did not provide sufficient detail because it was not itemized. Id. at p. 10. It is undisputed that BPAP did not provide an itemized estimate upon Owners' request. Matlock testified that Owners would adjust an estimate if an insured and a contractor provide an itemized estimate and documentation showing like-kind and quality materials are be used (Doc. 24-8, p. 12), which shows Owners' refusal to accept BPAP's estimates was the result of BPAP's failure to provide sufficient documentation.

The policy does not require Owners to accept BPAP's estimates that exceed its own. Nevertheless, Owners attempted to resolve BPAP's claim by requesting an itemized breakdown when BPAP's estimate exceeded the one provided by Owners. An itemized estimate was necessary for Owners to understand whether the costs in the estimate were justified. When BPAP provided a vague estimate that did not detail what work the contactor would complete, Owners tried to obtain the necessary information itself by speaking with the contractor. Id. at p. 10. Additionally,

Matlock testified that Owners retained two companies to do an inspection of the buildings and provides estimates because BPAP disputed Owners' estimate. Id. at p. 8. Owners then provided BPAP an updated estimate to reflect the inspection and sent a supplemental payment for actual cash value. Owner's request for an itemized estimate did not amount to preventing BPAP from performing a condition precedent. Rather, Owners attempted to settle BPAP's dispute regarding the estimate. Accordingly, the doctrine of prevention does not excuse BPAP's failure to repair or replace the damaged property.

The undisputed evidence shows BPAP understood the policy requires it to repair or replace the damaged property before Owners will pay replacement cost. Nevertheless, nearly 4 years have passed since the hailstorm and BPAP has not completed any of the work, other than allegedly repairing the roof of 1323 Republic, unit L. Therefore, BPAP is not entitled to replacement costs at this time.

### 3. Breach of Contract Claim

"The elements for a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. A breach of contract is the nonperformance of a contractual duty when it is due. The party asserting a breach of contract must prove all elements." Swenson v. Mahlum, 2019 ND 144, ¶ 19, 927 N.W.2d 850 (internal citations omitted).

BPAP argues Owners breached its contract with BPAP by failing to pay replacement cost for damages to the buildings, as required by the policy. As noted above, it is undisputed that the policy requires BPAP to first repair or replace the damaged property before Owners will pay

replacement cost and it is undisputed BPAP has not completed the repairs. BPAP is not entitled to replacement cost of the damaged property at this stage.

BPAP also argues summary judgment is improper because the parties dispute the amount of loss. However, any dispute as to amount of loss regarding replacement cost is irrelevant because BPAP is not entitled to replacement cost at this stage. The property must be repaired or replaced as a *condition precedent* to recovering replacement costs. Additionally, a review of the complaint reveals the actual cash value paid by Owners is not disputed in this case. BPAP's breach of contract, declaratory judgment, and bad faith claims are all based on Owner's failure to pay replacement cost value. BPAP does not bring claims or seek damages for any alleged failure of Owners to pay the appropriate actual cash value. Therefore, even if disputed, the actual cash value is not an issue of material fact in dispute in this case. Accordingly, Owners did not breach its obligations under its policy with BPAP. Summary judgment in favor of Owners as to BPAP's breach of contract claim is granted.

### B.   BAD FAITH CLAIM

An insurer has a duty to act fairly and in good faith in its contractual relationship with its policy holders. Hanson v. Cincinnati Life Ins. Co., 1997 ND 230, ¶ 29, 571 N.W.2d 363. "The test for bad faith is whether the insurer acts unreasonably in handling an insured's claim by failing to compensate the insured, without proper causes, for a loss covered by the policy." Id. BPAP argues Owners breached its obligations of good faith and fair dealing by acting unreasonably in handling BPAP's claim. Specifically, BPAP argues Owners' refusal to consider BPAP's estimates is evidence of bad faith. The record does not support this contention. Matlock's testimony establishes that Owners attempted to resolve BPAP's claim. Matlock contacted BPAP's contractor to obtain

an itemized estimate when BPAP did not provide one. Additionally, Owners retained two companies to inspect the buildings and provide estimates because BPAP disputed Owners' estimate. Owners then provided BPAP an updated estimate and sent a supplemental payment for actual cash value to reflect the new estimate.

BPAP argues Owners acted in bad faith by failing to pay replacement cost. The unambiguous terms of the policy require BPAP to repair or replace damaged property as a *condition precedent* before Owners must pay replacement cost. BPAP is not entitled to replacement cost because it did not complete the required repairs to the buildings. Under the policy BPAP is entitled only to the actual cash value that Owners paid. Therefore, Owners did not act in bad faith by failing to pay replacement cost under the circumstances. In this case, BPAP had contracted for replacement cost coverage. The insured is generally entitled under the policy to an immediate payment representing the actual cash value of the loss, which was done in this case. The actual cash value payments ($204,449.32.) can then be used as seed money to start the necessary repairs. Here, BPAP put that cash value payments in escrow back in 2019 and 2020; the monies remain there today; and no further funds have been spent or used for repairs. Summary judgment in favor of Owners as to BPAP's bad faith claim is granted.

### IV.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 21) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 3rd day of October, 2023.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

13